IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01171-MEH

KANSAS WHEAT ALLIANCE, INC., and
KANSAS STATE UNIVERSITY RESEARCH FOUNDATION,

    Plaintiffs,

v.

THUNDERBIRD SEED CONDITIONING, LLC,
THUNDERBIRD COMMODITIES, LLC, and
JOHN DOES 1-50,

    Defendants.

---

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

**Michael E. Hegarty, United States Magistrate Judge**.

Defendants Thunderbird Seed Conditioning, LLC and Thunderbird Commodities LLC ("the Thunderbird Defendants") have filed a Motion for Summary Judgment under Fed. R. Civ. P. 26 [filed June 21, 2013; docket #51]. The matter is fully briefed, and the Court held oral argument on September 25, 2013. For the reasons described below, Defendants' Motion is **denied**.

**BACKGROUND**

**I.    Introduction**

The Plant Variety Protection Act (PVPA), 7 U.S.C. §§ 2321-2582, is a law that grants federal intellectual property protection to, among other things, new varieties of wheat seed. Kansas State University (KSU) develops new strains of wheat and other seed for purposes of increasing yields for farmers. Under the PVPA, the owner of a new variety can apply for and obtain a Certificate of Plant Variety Protection (thus making it "certified" seed) that bestows certain rights, such as controlling the sale and reproduction of a protected variety and earning royalties off of sales. In the

present case, KSU obtained such a Certificate from the United States Department of Agriculture and granted a license to Kansas Wheat Alliance (KWA) to enforce its protected rights.

Under the law, farmers who lawfully obtain a protected seed variety can plant it, grow it, harvest it, and then sell it to market and also keep some seed for their next year's planting. When the wheat is harvested, it contains organic and inorganic impurities which do not render it unsuitable for market sale but do render it unsuitable for replanting, because some of those impurities are weeds and other undesirable noxious seeds. Therefore, seed that will be used for replanting must be "conditioned," or cleaned, before it is replanted. The farmers generally do not condition the seed themselves but hire custom conditioners.

The PVPA prohibits anyone from *transferring for reproductive purposes* any certified seed, without the permission of the Certificate holder. It also prohibits conditioning certified seed that is intended to be transferred for reproductive purposes, absent permission of the Certificate holder.

KWA, which held the right to enforce KSU's intellectual property rights for certain certified wheat seed, believed that the Defendants[1] were conditioning seed under circumstances that were prohibited by federal law. KWA undertook an investigation, including using two persons who used false identities and a fictitious story line, to engage the Defendants and persuade them to condition certified wheat seed in a manner that violated the law. During that continuing investigation, including the discovery in which the parties have engaged in this lawsuit, KWA believes it has uncovered illegal activities of the Defendants. Defendants vehemently deny that the current record contains sufficient evidence of a federal law violation and thereby seek summary judgment.

For purposes of considering Defendants' motion, the following facts contained in the record

---

[1] I use the term "Defendants" throughout this Order in circumstances where one or both of the Defendants may have engaged in the described conduct, without specifically identifying which one or both engaged in the conduct, due to the witnesses' apparent use of the term "Thunderbird Seed Conditioning," "Thunderbird Commodities," and predecessor companies interchangeably.

2

are relevant. These facts are taken from the record before the Court, and in viewing the record on summary judgment the Court must draw all inferences in the light most favorable to the Plaintiffs. *See Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005)

## II.   Facts

The Plant Variety Protection Act ("PVPA"), 7 U.S.C. § 2321, *et seq*. creates intellectual property rights in newly developed seed varieties. *Id.* at § 2402. It creates a structure for the owner of a seed variety to enforce those rights. The owner of a variety sought to be protected may file an application for a Certificate of Plant Variety Protection ("Certificate") from the Secretary of Agriculture. *Id.* § 2421. If issued, the Certificate is recorded with the Plant Variety Protection Office. *Id.* § 2482. That Certificate permits the owner to prohibit others from selling the variety or reproducing it, and the owner may specify that the seed of that variety shall be sold in the United States only as a class of certified seed. *Id.* § 2483(1), (2)(A).

Plaintiff Kansas State University Research Foundation owns the Danby white wheat seed variety, Deposition of Darryl Strouts, p. 144, pursuant to a Certificate from the Secretary of Agriculture granted to the Kansas Agricultural Experiment Station on May 23, 2007 and obtained by KWA[2] through a license agreement dated May 24, 2012. Exhibit 8, Plaintiffs' Response to Motion for Summary Judgment ("Plaintiffs' Response"). An owner of a Certificate may assign its rights in a protected plant variety, as the Certificates are considered personal property. 7 U.S.C. § 2531. The KWA has the right to protect the intellectual property rights to the Danby wheat variety pursuant to the PVPA. Thus, the Danby wheat variety may only be legally sold (1) as a class of certified seed and (2) with permission of KWA. The KWA has the legal authority to authorize and license the use of this and other wheat varieties developed by KSU, for whom it collects the royalties

---

[2]KWA is a not-for-profit corporation that promotes research and development of wheat varieties to benefit farmers and consumers. (Amended Complaint, Docket #33 at ¶¶ 3-4.)

on such use. Strouts Deposition, at p. 26, 31. This specifically includes the right to enforce the PVPA rights of the owner of the particular protected seed variety. *Id.* at p. 35.[3]

A farmer can purchase certified seed from the holder of a Certificate and grow it, sell it to market, and replant it him- or herself, under the PVPA. This is the "saved seed" exception. 7 U.S.C. § 2543. It allows a farmer to replant seed obtained *or descended from* seed obtained legally, but not to sell it to another farmer who will plant it. *Id*. In order to legally grow and *sell*, *for propagation purposes*, any such certified seed, such grower must receive a license from the person or entity which holds the Certificate (or such person's or entity's licensee). The grower is then a certified seed dealer and can legally sell the protected variety of seed to farmers for planting.

Seed conditioning (or seed cleaning) is a process by which debris is cleaned from harvested seed. Statement of Undisputed Facts ¶ 5, Motion for Summary Judgment. The Stum family, members of which own the Defendants in this case as well as other entities mentioned below, have been in the seed conditioning business for several decades.[4] Affidavit of Monte Stum, ¶ 2.

Typical seed conditioning is accomplished by the "conditioner" (here, one of the Thunderbird entities) traveling to a farm with special machinery and conditioning the seed onsite and returning it immediately to the farmer who requested the conditioning. The Thunderbird Defendants do not deliver the conditioned seed to anyone else. (Thunderbird Defendants' Statement of Undisputed Facts ¶¶ 7-8). Generally, they condition wheat only for the purpose of replanting

---

[3]KWA was founded by Kansas Wheat Economics, Kansas Association of Wheat Growers, Kansas Crop Improvement Association, Kansas Seed Industry Association, Kansas State University's Research and Extension Office, and Kansas State University Research Foundation, who each have a representative on KWA's board. Strouts Deposition, at pp. 27-28.

[4]The Defendants are entities created by the Stum family. Linly Stum is the father and Sherrell Stum the mother of brothers Lane and Monte Stum. Deposition of Monte Stum, pp. 13, 15, 17. The family owns large amounts of land and runs various business interests in Colorado. They have organized themselves into separate legal entities for estate planning purposes. Deposition of Linly Stum, at p. 7.

(propagation). Linly Stum Deposition, pp. 55-56, 80-81.

In 1994, amendments to the PVPA made unauthorized seed conditioning a ground for infringement of the Act. Under 7 U.S.C. § 2541(a)(7), conditioning a protected variety for the purpose of propagation, except for "saved seed" purposes or with permission of the owner of the Certificate, is considered infringement of the Act. *See* Strouts Deposition, p. 147.

Defendant Thunderbird Seed Conditioning LLC held, for the year 2010, a license to condition seed in Colorado, issued by the Colorado Seed Growers Association (CSGA). Exhibit 5, Plaintiffs' Response. There is no record evidence that, for the years 2009 and 2011-13, either Defendant held such a license, although another Stum family entity, Thunderbird Livestock and Land, Inc. (TLL), did hold a license for those years. *Id.*

The Thunderbird Defendants, on September 12, 2011, conditioned 400 bushels of the Plaintiffs' protected seed (in this case, the "Fuller variety"), at the request of someone acting as an investigator for Plaintiffs who falsely held himself out as a farmer. Amended Complaint at ¶ 97. Plaintiffs allege that the investigator stated that his seed was Fuller variety, *id.* at ¶ 108, and that the investigator had obtained it in a farmer-to-farmer sale and would replant it in his fields, *id.* at ¶¶ 110-11, a transaction that would be prohibited under the PVPA. Plaintiffs allege that in this transaction, the Thunderbird Defendants did not follow the recommended protocol of the Colorado Certified Seed Directory and required no paperwork that would record knowledge of and compliance with the PVPA. *Id.* at ¶¶ 99, 117. At the time, Plaintiffs only authorized sales of its Fuller variety wheat seed with written notice containing statutorily designated language signifying that (1) the seed was protected under the PVPA; (2) unauthorized propagation or multiplication of the seed was prohibited; and (3) the use of the seed by the purchaser was authorized only for purposes of growing a commercial crop of grain. *Id.* at ¶ 181. Plaintiffs required such notice on all bags of wheat seed

they sold and on notices accompanying all bulk sales of their wheat seed. *Id.* at ¶ 182. Additionally, Plaintiffs placed PVP notices on their marketing and promotional materials for their protected wheat varieties. *Id.* at ¶ 183.

Even more telling, during the Plaintiffs' "undercover" investigation, a Thunderbird representative made an admission that (1) he had just conditioned 35,000 bushels of wheat, (2) the person for whom he conditioned the wheat was not "supposed to be selling seed wheat," and (3) the wheat that the Thunderbird entity conditioned was intended to be sold. Plaintiffs' Response, Exhibit 14, p. 18.

The Stum family, through their farming entities, obtained their Danby variety wheat in 2006 (as noted below, only after convincing the owner of the variety to let them have it), prior to Danby being the subject of any certification under the PVPA. Linly Stum Deposition, pp. 34-35. Thereafter, in 2007, as noted above, Danby became a protected variety. In 2008, the Stums had significant stores of Danby wheat and knew that the Danby was certified seed. *Id.*, p. 78. In 2010, one of the Stum entities, non-defendant TLL, sold Danby seed to at least one third party (a man named Arns) for the purpose of propagation. *Id.*, pp. 46-49. TLL also sold Danby to other Stum family entities or members. The Danby wheat was raised by the Stums' farming operations and stored on their land, and when a Stum family member, for example Monte, wanted to plant white winter wheat, they would obtain it from the storage facilities. Monte Stum Deposition, pp. 117-19. One of the Defendants conditioned the Stum family's Danby seed. *Id.*, p. 122. It appears that the Stums believed title to the Danby seed belonged to TLL. Linly Stum Deposition, p. 47.

After the Danby variety received its PVPA certification and KWA received authority to license it in 2008, there were news articles announcing this change in circumstances, and KWA sent letters to those who had purchased the variety in the past several years. Strouts Deposition, at p. 96-

6

97. KWA sent TLL such a letter in May 2008. *Id.*, pp. 97, 144-45, 149-50.

Although I will not cite every reference here, the record establishes that the Stums understand the nature of transactions involving certified seed and the requirement that sales of certified seed are not without restriction and must be conducted with proper legal authorization. For example, Monte Stum testified about his knowledge that certain seed has patent-like protection. Monte Stum Deposition, pp. 27-28. Linly Stum testified that at any point in time, the owner of a variety can start charging a royalty for sales of certified seed, and that the Stum family did start paying royalties on wheat transactions for varieties which previously had not required a royalty. Linly Stum Deposition, pp. 25-26. Further, Linly Stum served on the board of directors of the Colorado Seed Growers Association (CSGA), a counterpart of the Kansas Crop Improvement Association (KCIA),[5] which is a stakeholder in Plaintiff KWA. *Id.*, pp. 26-28. When the Danby variety was released by KSU, the CSGA, of which Linly was a director, had to convince KSU into letting some Colorado farmers even obtain Danby seed. *Id.*, p. 29.

Linly Stum has testified that his family had an assumption that, after 2007, although the Danby variety was certified, the Stums were authorized to grow and sell the Danby variety because the CSGA had a reciprocal agreement with the KCIA. *Id.*, p. 31. However, the Stums never made any attempt to confirm such a reciprocal agreement through a phone call or otherwise. *Id.*, pp. 31-32. There was in fact no such agreement. Strouts Deposition, pp. 142-43. In 2009 (although apparently without permission of or license from the CWGA, since TLL held the license during that year), the Thunderbird Defendants conditioned about 14,000 bushels of Danby wheat for TLL. Defendants' Statement of Undisputed Facts, ¶ 31.

Darryl Strouts, Plaintiffs' expert, has overheard comments from Monte Stum in the relatively

---

[5]The KCIA is the official seed certifying agency for the State of Kansas. Strouts Deposition, p. 15.

distant past to the effect that their conditioning business would handle seed regardless of "what it was, where it came from, where it was going to." Strouts Deposition, pp. 71, 145-46, 150.

## DISCUSSION

### I. Standard of Review

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). However, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that

evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co.*, 431 F.3d at 1255.

**II.    Analysis**

    A.    <u>Ruse Transaction</u>

With regard to the transaction in which one or both of the Defendants allegedly conditioned KWA's protected Fuller variety, this cannot serve as a violation of the PVPA. The relevant subsection of that law states that "it shall be an infringement of the rights of the owner of a novel variety to perform without authority, any of the following acts," including conditioning protected seed for purposes of propagation. 7 U.S.C. § 2541(7). Plaintiffs' investigator had legal authority to request that the Defendants condition the Fuller seed; therefore, as a matter of law, the elements of the statute are not satisfied, since the condition was not performed without authority. Even if the Plaintiffs prove that the Defendants acted with knowledge and belief that they were conditioning seed in a situation not permitted by the statute, the Defendants' actual conduct did not constitute a violation of the statute. Borrowing a principle from the criminal context, "Legal impossibility exists when an actor intends to commit a crime, but the completed act would not actually amount to a crime." *Reyes v. State*, 267 S.W.3d 268, 276 (Tex. App. 2008) *see U.S. v. Lewis*, 313 F. App'x 703, 706, 2009 WL 577657, at *3 (5th Cir. 2009) (same); *U.S. v. Helder*, 452 F.3d 751, 754 (8th Cir. 2006) (same).

    B.    <u>Conditioning of Certified Seed for Sale to Nonparties</u>

On the other hand, was the Defendants' conditioning of the protected Danby variety after

May 2007 (the date of certification of the variety), with sales to at least one third party and to other Stum family members or entities, a potential violation of the PVPA? Under the statute, the conditioning of certified seed for purposes of propagation, under circumstances in which the "saved seed" exception does not apply, is a violation of the law. In other words, under the plain terms of the statute, the Defendants cannot legally condition certified seed unless it is for a farmer who grew it and who replants -- *him- or herself* -- all of the conditioned seed. Defendants' conditioning of Danby seed for third-party use violates the terms of the statute. In *Delta and Pine Land Co. v. Sinkers Corp.*, 177 F.3d 1343, 1351-52 (Fed. Cir. 1999), however, the court held that intermediaries such as seed conditioners are not strictly liable for statutory violations. The court read into the law a requirement that the plaintiff prove that the conditioner "knew or should have known that [its] actions were in violation of" the statute. *Id.* at 1352.

Here, a disputed issue of material fact exists as to whether the Defendants knew or should have known that the Danby certified seed they conditioned, and which their related Stum entities sold or transferred to a third party and to other Stum persons or entities, was an illegal transaction.

First, the record contains sufficient evidence that Linly and Monte Stum were knowledgeable about the restrictions on certified seed; knew that Danby was certified; and, at the very least, recklessly disregarded whether the Stum family had authority from the Certificate holder to sell Danby. Linly Stum, the family patriarch, actually built one of the two conditioning machines that the Defendants used. Monte Stum Deposition, p. 7. Monte Stum testified that Defendant Thunderbird Seed Conditioning LLC "was built by" Linly Stum. *Id.* p. 8. There is also testimony that Linly Stum "owns" Defendant Thunderbird Seed Conditioning LLC, *id.* p. 13, although it went out of business at the end of 2012. *Id.* p. 56. Numerous Stum family businesses are run out of one facility in Sheridan Lake, Colorado. *Id.* p. 10-11. For purposes of summary judgment, I will impute

knowledge of Linly and Monte Stum regarding seed conditioning to one another.

Second, the record contains sufficient evidence that the TLL is the Stum entity that purported to be a certified seed dealer and held Danby seed after 2007; that any conditioning of Stum family (*i.e.*, TLL) Danby certified seed was conducted by Defendants; that Defendants actually conditioned Danby certified seed that was sold to a third party (the Arns transaction); that the Danby certified seed conditioned by Defendants was also sold to one or more distinct Stum family entities or farmers; that whichever Stum entity conditioned this seed, the conditioner knew or should have known that the seed conditioning was for the purpose of sale, for propagation purposes, to others; and that Defendants conditioned 35,000 bushels of certified seed for another farmer, knowing that the farmer intended to sell it as seed wheat.

Defendants argue that because they obtained Danby seed before any certificate was issued by the PVPO, there are no restrictions on what they may do with the wheat and its progeny. Under the plain terms of the statute, the conditioning of a protected variety without authority infringes the rights of the owner of that variety. There are no statutory exceptions. However, there is a "Grandfather clause," 7 U.S.C. § 2542, under which a person who reproduced or sold a variety that they themselves developed and produced more than one year prior to someone else's application for a certificate of plant variety protection is protected from liability. Certainly Congress could have created a similar grandfather clause for pre-certification purchases of seed, but did not. Moreover, the "saved seed" provision specifically protects from infringement any seed "descended from" seed obtained by authority of the owner of the variety, *but only* for replanting on the farmer's own land or for market/consumption sale. It does not protect pre-certification purchases of seed that is subsequently sold for propagation purposes.

Defendants knew that Danby was a protected variety.  They knew that there were

11

restrictions on conditioning a protected variety for purposes of propagation. They did condition a protected variety while knowing or having sufficient information to know that it was for purposes of propagation. They have stated that they believed they had authority to do so through a reciprocal agreement between the CSGA and the KCIA, but if they had this belief it was in reckless disregard of the truth that no such agreement existed. The "knew or should have known" standard is frequently used hand-in-hand with the "reckless disregard to the truth" standard. *E.g.*, *Anderson Anderson v. State Farm Mut. Auto. Ins. Co.*, 416 F.3d 1143, 1149 (10th Cir. 2005); *Kimm v. Department of Treasury*, 61 F.3d 888, 893 (Fed. Cir. 1995).

In sum, I believe at this point the record contains a sufficient factual dispute such that it would be error to enter judgment for the Defendants.

## **CONCLUSION**

For the reasons stated above, Defendants Thunderbird Seed Conditioning, LLC's and Thunderbird Commodities LLC's Motion for Summary Judgment under Fed. R. Civ. P. 26 [filed June 21, 2013; docket #51] is **denied**.

Dated at Denver, Colorado, this 3rd day of October, 2013.

                                                      BY THE COURT:

                                                      */s/ Michael E. Hegarty*

                                                      Michael E. Hegarty
                                                      United States Magistrate Judge